```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                            CRIMINAL ACTION No. 2:16-cr-00034

**CHRISTOPHER AYASH**

O R D E R

Pending are the defendant's <u>pro se</u> emergency motion for compassionate release, filed by the Clerk on May 15, 2020 (ECF No. 53), and his motion for leave to file a supplemental memorandum, filed by his counsel on June 21, 2021 (ECF No. 61). The court also takes note of the defendant's <u>pro se</u> motion to amend or supplement his motion for compassionate release, filed by the Clerk on June 4, 2020, as an exhibit to the defendant's reply brief.  <u>See</u> ECF No. 55-1 at 3–18.  It is ORDERED that the same be, and hereby it is, filed as a separate motion on the docket.

On April 12, 2016, the defendant pled guilty, pursuant to a plea agreement, to knowingly possessing a firearm with an obliterated and altered serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count One), and to knowingly possessing firearms in furtherance of a drug-trafficking crime,

in violation of 21 U.S.C. § 924(c)(1)(A)(i) (Count Two). See ECF No. 23; ECF No. 28; ECF No. 31; ECF No. 32; ECF No. 33. At sentencing, the court imposed a guidelines-recommended term of 60 months' imprisonment for the Count One offense. See ECF No. 44 ¶ 134; ECF No. 42; ECF No. 43; ECF No. 46 at 15-16. As for Count Two, the court imposed the guidelines-recommended and statutory minimum term of 60 months' imprisonment and explained, at the sentencing hearing, that it would "run, as it must, consecutively to [the term imposed] on Count One." ECF No. 46 at 26; see also ECF No. 42; ECF No. 43; ECF No. 44 ¶ 134.

In his pro se motion for compassionate release, the defendant asks the court to reduce his sentence of imprisonment by ordering his immediate release and placement in home confinement, pursuant to the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), and 18 U.S.C. § 3582(c)(1)(A)(i). See ECF No. 53. In support of his motion, the defendant cites the threat that COVID-19 poses at FPC Ashland, the facility where he is incarcerated. See id. He states that the conditions at FPC Ashland prevent him and other prisoners from following recommended guidance for preventing the spread of COVID-19 among the prisoners there, although he also states, somewhat incongruously, that prison staff have implemented lockdown, quarantine, and social-distancing measures and have

provided prisoners with face coverings. See id. at 2, 4-5; ECF No. 55-1 at 14-15. He further states that he has underlying health conditions that, according to the Centers for Disease Control and Prevention, place him at higher risk from COVID-19, including hypertension and chronic kidney disease. See ECF No. 53 at 2, 5.[1]

The defendant states that he has served over half of his term of imprisonment and anticipates being released from prison in April 2024. See id. He notes that he is a first-time offender with no criminal history prior to the current offenses and has undertaken steps to rehabilitate while in prison. See id. at 6; see also ECF No. 44 at 22-23. If released, the defendant states that he plans to reside with his wife. See EFC No. 53 at 6. He adds that his time in prison had been "infraction free" and appears to be accepting of a modification of his supervised release to include home confinement. See ECF No. 61 at 15-16.

Citing his medical conditions, the defendant requested relief first from a "case manager" at the prison. See ECF No. 55-1 at 1. The defendant states that the case manager, in an

---

[1] The defendant also states he suffers from osteoarthritis, see ECF No. 53 at 2, but he does not assert that this condition increases his risk from COVID-19.

unsigned, undated letter, denied the request on the ground that the defendant had been convicted of possessing a firearm in furtherance of a drug trafficking crime. See id at 2, 5. Thereafter, the defendant, via email, requested relief from the warden at FPC Ashland. See ECF No. 53-1 at 1. His email made no mention of the defendant's medical conditions or his previous request to the case manager. See id. In an emailed response, the warden denied the request because the defendant failed to identify a basis for compassionate release listed in the applicable Bureau of Prisons ("BOP") policy and to provide supporting documentation and because the warden found that release would minimize the severity of the defendant's offenses. See id.[2]

---

[2] In the motion to amend or supplement, the defendant argues that the BOP's denial of his request for release or home confinement was arbitrary, capricious, and not supported by substantial record evidence, in violation of the Administrative Procedures Act, because the case manager appeared to categorially exclude from compassionate-release consideration prisoners who, like the defendant, are convicted of 18 U.S.C. § 924(c) violations, without considering their underlying medical conditions, their COVID-19 risk factors, the circumstances of their offense, or the risk to society posed by their release and because the warden did not take steps to rectify the case manager's decision. See ECF No. 55-1 at 5-11. This argument misunderstands the nature of the court's review under § 3582(c)(1)(A). Although the First Step Act modified that provision by permitting defendants to bring compassionate-release motions when the BOP fails to do so, it did not alter the conclusion, expressed by numerous courts prior to the Act's passage, that the BOP's decision whether to move for compassionate release on a defendant's behalf is not itself

4

The defendant does not indicate whether he further pursued the administrative appeals process available to him. He also argues that circumstances involving the spread of COVID-19 are so dire that he should be excused from the requirement that he exhaust available administrative remedies before seeking relief from this court. See ECF No. 53 at 1.[3]

---

subject to judicial review. See Deffenbaugh v. Sullivan, No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); see also Crowe v. United States, 430 F. App'x 484, 485 (6th Cir. 2011) (collecting cases).

[3] The defendant asserts that the BOP's failure to grant him compassionate release or to place him in home confinement in light of the risks COVID-19 poses for prisoners, who, like him, are incarcerated in a low-security facility and are at higher risk from COVID-19 due to underlying medical conditions, amounts to deliberate indifference to a serious medical need in violation of his Eighth Amendment rights. See ECF No. 53 at 4-5; ECF No. 55 at 3-7; ECF No. 55-1 at 11-16. He further asserts that the BOP's decision to subject him to quarantine and lockdowns when prisoners at other facilities are granted compassionate release violates his Fifth Amendment rights to procedural due process and equal protection. See ECF No. 55-1 at 16-18. The standards and analyses applicable to claims for violations of the Fifth and Eighth Amendments do not apply to a compassionate-release motion, and, notwithstanding the defendant's assertion that he does not intend to raise a claim under Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), see ECF No. 55 at 7, to the extent he does seek to raise a challenge to the conditions of his confinement, he must file, depending on the nature of the relief sought, either a Bivens action or a 28 U.S.C. § 2241 petition in the district in which he is incarcerated, namely, the Eastern District of Kentucky. See, e.g., United States v. Hartley, No. 5:13-CR-00046-KDB-DSC-1, 2020 WL 5550394, at *1 (W.D.N.C. Sept. 16, 2020).

After filing his pro se motion, the defendant retained counsel and filed a motion for leave to file a supplemental memorandum in support of his compassionate-release motion. See ECF No. 61. The defendant states that the government has advised that it opposes the motion for leave to file the supplemental memorandum, see id. at 1. In the supplemental memorandum, the defendant, citing recent case law, argues that the warden's denial of his email request satisfies the exhaustion requirement for purposes of seeking compassionate release. See ECF No. 61-1 at 2-3. He catalogues his medical conditions (including chronic kidney disease, hypertension, hyperlipidemia, and obesity), provides medical records to substantiate them, and argues that they render him vulnerable to COVID-19. See id. at 6-11; see also ECF No. 61-4. He cites to decisions from other courts granting compassionate release to prisoners with similar conditions during the COVID-19 pandemic. See ECF No. 61 at 8-11. He further notes his efforts at rehabilitation while incarcerated as well as his plans to reside with his family following release. See id. at 6, 10-11, 16-17; see also ECF No. 61-5; ECF No. 61-6; ECF No. 61-7. He also argues that the 18 U.S.C. § 3553(a) sentencing factors favor compassionate release. See ECF No. 61 at 13-15; see also ECF No. 61-8.

Additionally, the defendant points to a "[s]entencing [i]ssue" that he argues constitutes an extraordinary and compelling circumstance warranting his release. ECF No. 61 at 12. Specifically, the defendant notes, that, after he was sentenced, the Supreme Court issued its opinion in Dean v. United States, 137 S. Ct. 1170 (2017), and held that, although a term of imprisonment for a § 924(c) offense must run consecutively to a term imposed for a non-§ 924(c) offense, sentencing courts are not precluded from considering the mandatory term imposed for the § 924(c) offense in calculating the term for the non-§ 924(c) offense. See 137 S. Ct. at 1178. The defendant appears to argue that this court's explanation at sentencing that his Count Two term for a § 924(c) violation must run consecutively to his Count One term implicates Dean and that the court may view Dean as a subsequent change in law amounting to an extraordinary and compelling circumstance justifying his release. See ECF No. 61 at 12-13.

With respect to the defendant's arguments involving his susceptibility to COVID-19, the court notes that, as of July 27, 2021, the BOP reports that FCI Ashland, which is comprised of FPC Ashland and another BOP facility, has, out of 985 total inmates, one confirmed active case of infection, and no confirmed active case of infection for staff. See Federal

Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited July 27, 2021).[4] The court further notes that the BOP also reports that 815 inmates and 133 staff at FCI Ashland have received full COVID-19 vaccine inoculations. See id.

With respect to the defendant's argument concerning Dean, the court is not persuaded. The court stated at sentencing that it must impose the term for the defendant's Count Two § 924(c) offense to run consecutively to his Count One term. This was and remains a correct statement of the law, and the defendant does not appear to argue otherwise. The court did not state, contrary to Dean's holding, that it was precluded from considering the mandatory Count Two § 924(c) term when determining the appropriate term for the defendant's Count One offense. The defendant's sentence simply does not implicate

---

[4] In his briefing dated June 1, 2020, the defendant asserts that no prisoner at his facility had been tested for COVID-19. See ECF No. 55 at 2, 10. To support this assertion, he states that he was told by a prison official that tests were not being administered at his facility and that officials did not intend to administer tests there. See id.; ECF No. 55-1 at 15. Although the defendant does not explain the import of this assertion, he may be attempting to cast doubt on the number of infected prisoners reported by the BOP. The court notes that the defendant provides no competent evidence to support his assertion. The court further notes that, as of July 27, 2021, the BOP reports that it tested 747 inmates at FCI Ashland. See Federal Bureau of Prisons, COVID-19 Coronavirus, supra.

Dean, and Dean provides no basis for finding that extraordinary and compelling circumstances exist.[5]

The court also takes note of the gravity of the offense conduct underlying the defendant's conviction and sentence. As recounted in the presentence investigation report, which was adopted by the court, the defendant operated an

---

[5] The defendant's argument regarding Dean appears to be a collateral attack on his sentence that typically must be raised in a 28 U.S.C. § 2255 motion. Although the availability of § 2255 relief has been closely circumscribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214, recent Fourth Circuit decisions seem to view the First Step Act's amendments to the compassionate-release statute as offering federal prisoners at times an alternative to AEDPA's strictures, see United States McCoy, 981 F.3d 271, 284 (4th Cir. 2020) ("[D]istrict courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." (emphasis in original) (internal quotation marks and ellipsis omitted)). District courts in this circuit have differed on whether arguments that are typically required to be raised on direct appeal or in a § 2255 motion may be raised in a compassionate-release motion. Compare, e.g., Harris v. United States, 2:10-01198-MBS, 2021 WL 2402312, at *8 n.8 (D.S.C. June 11, 2021) (inviting a § 2255 movant, in light of McCoy, to raise an unsuccessful claim of sentencing error in a compassionate-release motion), with, e.g., United States v. Ferguson, No. 3:04cr13-01, 2021 WL 1701918, at *4 (E.D. Va. Apr. 29, 2021) ("The compassionate release statute . . . does not replace the established mechanism for challenging the validity of a sentence. Nor does it allow the defendant to make arguments that were, or could have been, raised in direct appeal or collateral review."). Here, the court need go no further than to say that, to the extent the defendant seeks compassionate release in light of Dean and to the extent such an argument is permitted to be raised in a compassionate-release motion, the court rejects the argument for the reasons stated herein.

9

elaborate drug manufacturing laboratory – which included vats, beakers, funnels, bottles, labels, capsules, pill presses, warming plates, industrial mixers, and hundreds of other pieces of laboratory equipment, as well as numerous drug precursors and other chemicals – that he used to manufacture a variety of controlled substances, which he often would pass off as counterfeit prescription drugs. See ECF No. 44 at 9-13; see ECF No. 43 at 1. The defendant concealed the laboratory behind a false wall in one of his homes, where he also maintained an arsenal of 61 firearms, including fully automatic machineguns and silencers, and thousands of rounds of ammunition. See ECF No. 44 at 13-19. At another of the defendant's homes were found additional laboratory equipment, illicit drugs, and seven more firearms. See id. at 18. These facts cast substantial doubt on the defendant's assertions that the § 3553(a) factors weigh in his favor.

The court finds that, under the circumstances, the defendant has not shown himself to be at undue risk from COVID-19, has not shown substantial diminishment of his ability to provide self-care in the environment of the correctional facility, and has not presented extraordinary and compelling reasons meriting the relief he seeks.

Accordingly, it is ORDERED that:

1. the defendant's motion to amend or supplement, which has been filed as a separate motion pursuant to this order, be, and hereby it is, granted to the extent the defendant requests leave to supplement his emergency motion for compassionate release;

2. the defendant's motion for leave to file a supplemental memorandum (ECF No. 61) be, and hereby it is, granted; and

3. the defendant's emergency motion for a sentence reduction (ECF No. 53) be, and hereby it is, denied.

The Clerk is directed to transmit copies of this order to the defendant and all counsel of record.

ENTER: July 28, 2021

John T. Copenhaver, Jr.
Senior United States District Judge